Slip Op. 17-138

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ABB, INC., | |
|      Plaintiff, | |
|      v. | |
| UNITED STATES, | Before: Mark A. Barnett, Judge |
|      Defendant, | Consol. Court No. 16-00054 |
|      and | **PUBLIC VERSION** |
| HYUNDAI HEAVY INDUSTRIES CO., LTD., HYUNDAI CORPORATION USA, AND HYOSUNG CORPORATION. | |
|      Defendant-Intervenors. | |

## OPINION AND ORDER

[Defendant's request for a remand is granted with respect to Commerce's treatment of respondents' commissions and its revenue capping practice; Commerce's decision to cap Hyosung's reported freight revenue by Hyosung's reported domestic inland freight expense is sustained.]

Dated: October 10, 2017

*R. Alan Luberda*, Kelley Drye & Warren LLP, of Washington, DC, argued for plaintiff. With him on the brief were *David C. Smith, Jr.*, and *Melissa Marie Brewer*.

*John J. Todor*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of Counsel on the brief was *James H. Ahrens, II*, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, DC.

*David Edward Bond*, White & Case, LLP, of Washington, DC, argued for defendant-intervenors Hyundai Heavy Industries, Co., Ltd., and Hyundai Corporation USA. With him on the brief were *Walter Joseph Spak*, *William Joseph Moran*, and *Ron Kendler*.

*Jaehong David Park*, Arnold & Porter Kaye Scholer LLP, of Washington, DC, argued for consolidated plaintiff and defendant-intervenor Hyosung Corporation.  With him on the brief were *Henry David Almond*, *Andrew Mercer Treaster*, *Daniel Robert Wilson* and *Sylvia Yun Chu Chen*.

Barnett, Judge:  ABB, Inc. ("Plaintiff" or "ABB") and Hyosung Corporation ("Hyosung") each challenge certain aspects of the final results of the U.S. Department of Commerce's ("Commerce") second administrative review of the antidumping duty order on large power transformers from the Republic of Korea for the period of review ("POR") August 1, 2013, to July 31, 2014 ("POR 2").[1]  *Large Power Transformers from the Republic of Korea*, 81 Fed. Reg. 14,087 (Dep't Commerce March 16, 2016) (final results of antidumping duty admin. review; 2013-2014) ("*Final Results*"), CJA 1; PJA 1; PR 205; ECF No. 73-1; and accompanying Issues and Decision Mem., A-580-867 (Mar. 8, 2016) ("I&D Mem."), CJA 2; PJA 2; PR 198; ECF No. 73-1.

ABB argues that "Commerce failed to deduct U.S. commission expenses from constructed export price ('CEP') and instead added the U.S. commission expense to normal value," and that it "improperly granted both respondents a commission offset to normal value" for commissions on U.S. sales incurred in the United States.  Confidential Pl.'s Mem. of Law in Supp. of Mot. for J. on the Agency R. ("ABB's MJAR") at 2, ECF

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 27-3, and a Confidential Administrative Record ("CR"), ECF No. 27-4. Parties further submitted joint appendices containing record documents cited in their briefs.  *See* Public Joint Appendix ("PJA"), ECF No. 74; Confidential Joint Appendix ("CJA"), ECF No. 73.  Citations are to the confidential joint appendix unless stated otherwise.  Additionally, the court requested complete versions of certain record documents for which parties had only submitted selected pages in the joint appendices. These are cited separately as they appear in this opinion

No. 41-2.  ABB also argues that "Commerce failed to cap the revenues [Hyundai Heavy

Industries Co., Ltd. and Hyundai Corporation USA (collectively, "Hyundai")] included in

its gross unit prices for subject merchandise for sales-related services that were

separately purchased by the customer by the amount of the related expenses incurred

by Hyundai on those services" and, as a result, Hyundai's constructed export price is

"overstated" and its dumping margin is "understated."  *Id.* at 4.  Defendant has

requested remand on the issues raised by ABB.  Def.'s Resp. to Pl.'s Rule 56.2 Mots.

for J. Upon the Agency R. ("Def.'s Resp.") at 11-12, ECF No. 50; *see also* Def.'s Suppl.

Mem. Addressing Standard for Voluntary Remand ("Def.'s Suppl. Br."), ECF No. 79.

Hyosung argues that "Commerce's decision to use Hyosung's reported Korean

domestic inland freight expenses as the [] cap for [its] reported inland freight revenue,

when that revenue was made up primarily of U.S. inland freight revenue" is unsupported

by substantial evidence and not in accordance with law.  Confidential Mem. in Supp. of

Consol. Pl. Hyosung's Rule 56.2 Mot. for J. Upon the Agency R. ("Hyosung's MJAR") at

10, ECF No. 40-2.  Defendant argues that Commerce's decision to cap Hyosung's

inland freight revenue by its domestic inland freight expenses is supported by

substantial evidence and otherwise in accordance with law.  Def.'s Resp. at 12-16.

The motions are fully briefed and the court heard oral argument on August 1,

2017.  *See* Docket Entry, ECF No. 83.  For the reasons discussed below, the court

grants Defendant's request to remand the issues raised by ABB, and sustains

Commerce's determination with respect to Hyosung's inland freight revenue cap.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[2] and 28 U.S.C. § 1581(c) (2012).

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It "requires more than a mere scintilla," but "less than the weight of the evidence."  *Nucor Corp. v. United States*, 34 CIT 70, 72, 675 F. Supp. 2d 1340, 1345 (2010) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004)). In determining whether substantial evidence supports Commerce's determination, the court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  However, that a plaintiff can point to evidence that detracts from the agency's conclusion or that there is a possibility of drawing two inconsistent conclusions from the evidence does not preclude the agency's finding from being supported by substantial evidence.  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (citing *Consolo v. Fed. Mar.*

---

[2] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition, and all references to the United States Code are to the 2012 edition, unless otherwise stated.

*Comm'n*, 383 U.S. 607, 619-20 (1966)).  The court may not "reweigh the evidence or . .

. reconsider questions of fact anew."  *Downhole Pipe & Equip., L.P. v. United States*,

776 F.3d 1369, 1377 (Fed. Cir. 2015) (quoting *Trent Tube Div., Crucible Materials Corp.

v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992)); *see also Usinor v.

United States*, 28 CIT 1107, 1111, 342 F. Supp. 2d 1267, 1272 (2004) (citation omitted)

(the court "may not reweigh the evidence or substitute its own judgment for that of the

agency.").

Separately, the two-step framework provided in *Chevron, U.S.A., Inc. v. Nat.

Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), guides judicial review of

Commerce's interpretation of the antidumping and countervailing duty statutes.  See

*Nucor Corp. v. United States*, 414 F. 3d 1331, 1336 (Fed. Cir. 2005).

D<small>ISCUSSION</small>

## I.  Defendant's Remand Request

Defendant requests that the court remand Commerce's determination with

respect to two issues: (1) Commerce's treatment of Hyundai's and Hyosung's

(collectively "respondents") U.S. commissions, and (2) Commerce's treatment of

Hyundai's sales related revenue.  Def.'s Resp. at 11-12; Def.'s Suppl. Br. at 2-3.  ABB

supports Defendant's request, *see generally* Confidential Pl.'s Reply Br. ("ABB's

Reply"), ECF No. 71, but both respondents oppose the remand request.[3]

---

[3] Respondents did not have an opportunity to brief their response to Defendant's request.  However, at oral argument Hyundai spoke for both Parties in opposition to the remand request.

When an agency determination is challenged in the courts, the agency may "request a remand (without confessing error) in order to reconsider its previous position" and "the reviewing court has discretion over whether to remand." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (citations omitted).  Remand is appropriate "if the agency's concern is substantial and legitimate," but "may be refused if the agency's request is frivolous or in bad faith."  *Id*.

Commerce's concerns are substantial and legitimate.  In its motion for judgment on the agency record, ABB argues that Commerce improperly added U.S. commission expenses to normal value when it should have deducted them from the CEP, and improperly granted to both respondents commission offsets to normal value for commissions on U.S. sales incurred in the United States.  ABB's MJAR at 2.  Referencing Commerce's remand redetermination in the first administrative review of the antidumping duty order on LPT's from Korea,[4] Defendant acknowledges that Commerce recently has reconsidered its practice on U.S. commissions and explains that it seeks remand to "reconsider whether it is acting consistently with respect to U.S. commission expenses in this case."  Def.'s Suppl. Br. at 2-3.  Commerce has a substantial and legitimate interest in ensuring that its determinations reflect its practice regarding U.S. commission expenses.  *See SKF USA Inc.*, 254 F. 3d at 1029.  Therefore, even though each administrative review is a separate proceeding, and the

---

[4] This remand redetermination is the subject of separate litigation before this court.  *See generally ABB v. United States*, Court No. 15-00108.

records may differ between the two administrative reviews, remand is appropriate.[5]  *See id*.

Separately, ABB argues that Commerce erred when it "failed to cap revenues included by Hyundai in gross unit price for [certain] sales-related services . . . by the expenses associated with those services," and that this is contrary to Commerce's established practice of capping service-related revenues at the amount of the corresponding expense.  ABB's MJAR at 31-35.  ABB maintains that "the record demonstrates that Hyundai improperly included revenues in excess of related expenses in gross unit price," such that Commerce's decision is not supported by substantial evidence.  *Id.* at 35-45 (capitalization omitted).  Defendant requests remand on this issue so that Commerce may evaluate its revenue capping practice and ensure that its application of this practice is consistent with respect to both respondents.  Def's Response at 12.[6]  The court agrees that in articulating a desire for consistent treatment

---

[5] At oral argument and in briefing before the court, Hyundai expressed concern that remand will complicate the legal issues before the court because the court has yet to rule on Commerce's treatment of U.S. commissions issue in the first administrative review remand redetermination, and because it would only allow Commerce to apply factors that are incorrect and issue a determination that is contrary to law.  *See* Def.-Intervenor's Mot. to Stay Proceedings Pending Resolution of the Commission Offset Issue at 5, ECF No. 61.  In a separate opinion issued concurrently with this opinion, the court is affirming Commerce's treatment of U.S. commission expenses in the first administrative review.  *ABB Inc. v. United States*, 41 CIT ___, Slip Op. 17-137 (Oct. 10, 2017).  Moreover, Commerce has articulated a substantial and legitimate interest in making its remand request and, as such, remand is appropriate.

[6] Hyundai again registered its concerns at oral argument, namely that Commerce may be requesting a remand so that it may apply an allegedly new practice relating to the identification of service-related revenue that it developed for the first time in the third administrative review, currently on appeal before this court.  *See Hyundai Heavy Industries Co., Ltd. v. United States*, Court No. 17-00054.  Here, however, Commerce has requested remand in order to ensure that its revenue capping practice is consistent

with respect to both respondents, Defendant has identified a concern that is substantial

and legitimate.  It is within the court's discretion to grant remand when appropriate, as it

is here.  *See SKF USA Inc.*, 254 F. 3d at 1029.

## II. The Cap on Hyosung's Inland Freight Revenue

Hyosung challenges Commerce's decision to cap Hyosung's reported inland

freight revenue by Hyosung's reported domestic (i.e., within Korea) inland freight

expense.  *See generally* Hyosung's MJAR.

Hyosung reported inland freight revenue in a field it labelled "REV_INLFT" and

described that data field as freight revenue "plant to port." *Id.* at 4; *see also* Def.'s Resp.

at 13 (citing Hyosung's June 8, 2015 Supp. Questionnaire Resp. at Ex. S-18, CJA 16;

CR 185-186; PJA 16; PR 137; ECF No. 73-2; Hyosung Aug. 3, 2015 Third Supp. Sales

Questionnaire Resp. at Ex. S-10, CJA 17; CR 227; PJA 17; PR 157; ECF No. 73-2

(identifying the REV_INLFT field as "Freight Revenue – Plant to Port")).  In the

preliminary results, Commerce made deductions "[i]n accordance with section 772(c)(2)

of the Act[,19 U.S.C. § 1677a(c)(2)], and where appropriate, [] from the starting price for

certain movement expenses, including [domestic (i.e., Korean)] inland freight . . . [and]

U.S. inland freight."  Analysis of Data Submitted by Hyosung Corp. in the Prelim.

Results of the 2013-2014 Admin. Review of the Antidumping Duty Order on Large

Power Transformers from the Republic of Korea (Dep't Commerce Aug. 31, 2015)

("Prelim. Mem. - Hyosung") at 11, CJA 24; CR 239; PJA 24; PR 169; ECF No. 73-3

---

with respect to both respondents; anything beyond that is conjecture.  As with the earlier
issue, Commerce's interest in providing consistent treatment to both respondents is
substantial and legitimate and, as such, remand is appropriate.

(proprietary prelim. mem. for Hyosung).  Commerce capped Hyosung's reported inland

freight revenue by its domestic inland freight expenses.  *Id.* at 4 ("Consistent with

[Commerce's] normal practice, we have capped sales-related revenues to offset directly

associated sales expenses (i.e., with respect to fields . . . DINLFTPU/REV_INLFT.").

Thus, Commerce used the data reported by Hyosung in the field DINLFTPU (i.e.,

domestic inland freight expense to port in Korea) to cap the freight revenue reported in

REV_INLFT.  *See* Case Br. of Hyosung Corp. ("Hyosung Case Br.") at 4-5, CJA 31; CR

259; PJA 31; PR 184; ECF No. 73-3.

In its administrative case brief, Hyosung first argued that Commerce should not

cap its expense revenue amounts, but that if it continued to do so, it should "revise its

programming language so that the inland freight expenses incurred in the United States

are also included in the pool of expenses included in the cap."  *Id.* at 5.  Hyosung

sought to persuade Commerce that it should include U.S. inland freight expenses with

domestic inland freight expenses in the cap, explaining that Hyosung and its customers

negotiate both the domestic inland freight and the terms for delivery to the U.S. location.

*Id*. at 5.[7]  Hyosung argued that the record demonstrated that its reported inland freight

revenue amounts were tied to its U.S. inland freight expenses.  *Id.* at 5-6.  To this

---

[7] Hyosung references a transaction identified as SEQU 21.  Hyosung Case Br. at 6 n.6
(citing Hyosung's May 11, 2015 Supp. Questionnaire Resp. ("Hyosung's May 11 SQR")
at Ex. SA-7-D, CJA 12; CR 109-112; PJA 12; PR 101; ECF No. 73-2).  Hyosung argued
that the "invoice to the customer for this sale includes a single line for freight, and the
customer's purchase order specifies a delivery point in [[                    ]] . . . [as well as] [[
]]," and it "stipulates that [[                                    ]]."  *Id.* at 6.  Hyosung
contended this meant that "freight charges at issue relate primarily to the freight
incurred in the United States, and not only to the minimal inland freight expenses
incurred in Korea."  *Id*.

assertion, Hyosung appended a footnote in which it suggested that Commerce's

decision to use domestic inland freight expense alone as the cap "may have been the

result of confusion caused by the variable labels listed in Hyosung's database

summaries."[8]  *Id*. at 6 n.5.

In the *Final Results*, Commerce continued to cap Hyosung's inland freight

revenue by its domestic inland freight expenses, noting that the record demonstrated a

direct relationship between Hyosung's reported freight revenue and its domestic inland

freight expenses, and that Hyosung itself "linked the inland freight revenue directly to

the underlying expense, which is *domestic inland freight from Hyosung's plant to port of

exportation*."  I&D Mem. at 24 nn.108-109.  Commerce determined that the record did

not link Hyosung's U.S. inland freight expense to its reported inland freight revenue and

that it would not "permit respondents to expand the expense fields to include revenue

offsets for expenses that did not generate the revenue."  *Id.*

Following the *Final Results*, Hyosung made ministerial error allegations, claiming

it had "confirmed to [Commerce] that any identification of the freight revenue amounts

being associated with freight from the factory to the port was an inadvertent labeling

---

[8] The footnote read: "Hyosung believes [Commerce's] preliminary decision to treat
DINLFTPU alone as the revenue cap may have been the result of confusion caused by
the variable labels listed in Hyosung's database summaries. Specifically, Hyosung's
SAS database print out and file description materials included the label 'Freight
Revenue plant to Port.'  Although this variable label nominally identifies the revenue as
associated with plant to port shipments, this label was for informational purposes and
merely identified one component of the freight revenue.  As discussed above, the record
makes clear that the inland freight revenue refers to transportation to the customer's site
and is not limited to transport to the Korean port from the factory."  Hyosung Case Br. at
6 n.5 (internal citation omitted).

error in preparing the database summary sheets and databases in its submissions."

Large Power Transformers from the Republic of Korea: Ministerial Error Allegations

("Hyosung Ministerial Error") at 4-5, CJA 41; CR 279; PJA 41; PR 206; ECF No. 73-4

(citing Hyosung Case Br. at 6 n.5).  It also alleged that Commerce ignored record

evidence that the inland freight revenue field included U.S. inland freight revenue.  *Id.* at

5-8.  Hyosung argued that Commerce based the *Final Results* on this single labeling

error that was contradicted by the record.  *Id.* at 7.  Hyosung also pointed to the

documents provided regarding two sample sales in support of its position.[9]  *Id.* at 5-7.

In the Amended Final Results, Commerce referred to the I&D Memo, noting that

the record did not link U.S. inland freight expense to Hyosung's reported inland freight

revenue and that Hyosung had itself linked the inland freight revenue to the underlying

expense; therefore, the adjustment was methodological in nature and there was no

ministerial error.  Ministerial Error Mem. for the Am. Final Results of the 2013/2014

Admin. Review of the Antidumping Duty Order on Large Power Transformers from the

Republic of Korea ("Am. Final Results") at 5, CJA 44; CR 283; PJA 44; PR 219; ECF

No. 73-4 (citing I&D Mem. at Comment 3).

Before this court, Hyosung argues that Commerce ignored record evidence that

Hyosung's inland freight revenue field related to U.S. inland freight expenses (or was at

least inclusive of the same).  *See* Hyosung's MJAR at 5-8, 11-21.  Specifically, Hyosung

argues, Commerce ignored the "the huge disparity between the minimal domestic

---

[9] Specifically, transactions referenced as SEQUs 4 and 21.  Hyosung Ministerial Error at 5-7.

Korean inland freight expenses (related to the short trip from Hyosung's factory in Korea

to the port in Korea) and the U.S. inland freight expenses and revenues (for shipping

the [large power transformer] units from U.S. ports to their final destination within the

United States)," as well as documentation for sample sales transactions, *id.* at 7-8, and

instead "relied solely on informational data descriptors and labels related to the expense

[sic] fields in Hyosung's reported U.S. sales databases." *Id.* at 10.  Thus, Hyosung

argues that Commerce's failure to weigh all the evidence before it renders its

determination unsupported by substantial evidence in the record.  *Id.* at 11.  Defendant

responds that Hyosung's arguments are speculative and that Commerce's

determination was based on the record created by Hyosung during the administrative

review.  Def.'s Resp. at 12-16.  ABB also argues in support of Commerce's

determination.  Confidential Pl. and Def.-Int.'s Resp. in Opp'n to Consol. Pl. Hyosung's

Mot. for J. on the Agency Record at 12-27, ECF No. 51.

        The court will sustain Commerce's decision to use Hyosung's reported domestic

inland freight expenses as the applicable cap if it is supported by substantial evidence.

*See* 19 U.S.C. § 1516a(b)(1)(B)(i).  Section 1677a(c)(2) directs Commerce to reduce

the price used to establish CEP by "the amount, if any, included in such price,

attributable to any additional costs, charges, or expenses . . . which are incident to

bringing the subject merchandise from the original place of shipment in the exporting

country to the place of delivery in the United States."   19 U.S.C. § 1677a(c)(2).

Commerce offsets respondents' freight expenses with related freight revenues, capping

those revenues at the level of the associated expenses.  This court previously has

deemed Commerce's approach reasonable.  *Donnguan Sunrise Furniture Co., Ltd. v. United States*, 36 CIT ___,___, 865 F. Supp. 2d 1216, 1248 (2012) ("Commerce's approach is reasonable under the statute" when it "deducts respondent's freight expenses from [the price used to establish CEP] . . .  [and] then offsets respondent's freight expenses with related freight revenues, resulting in a net freight expense.").

The inclusion of multiple expense fields in the cap on Hyosung's domestic inland freight revenue would allow the revenue to offset more expenses and, therefore, be a favorable adjustment for the respondent.  It is well established that a respondent bears the burden of establishing its entitlement to any favorable adjustment.  *See e.g.*, *Allied Tube and Conduit Corp. v. United States*, 25 CIT 23, 29, 132 F. Supp. 1087, 1093 (2001) ("Commerce has reasonably placed the burden to establish entitlement to adjustments on [respondent], the party seeking the adjustment and the party with access to the necessary information.") (quoting *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1040 (Fed. Cir. 1996)); *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 24, 704 F. Supp. 1114, 1124, (1989), *aff'd*, 901 F.2d 1089 (Fed. Cir. 1990) ("[I]f these investigations are to be successful, parties must submit data promptly, and be very clear as to what the data indicates . . . [Commerce] did not abuse its discretion in refusing to recalculate the margin when the error made by [Commerce] is attributable to plaintiffs' late submission of ambiguous information.").

Hyosung argues that Commerce's decision to cap its reported inland freight revenue by its domestic inland freight expense is not supported by substantial evidence because Commerce "pointed only to database labels and summary descriptors to

support its conclusion that Hyosung's reported inland freight revenues pertained solely

to domestic inland freight." Hyosung's MJAR at 11.  However, it was Hyosung's burden

to establish its entitlement to the more favorable adjustment based on both domestic

and U.S. inland freight expense.  *See Fujitsu Gen. Ltd.*, 88 F.3d at 1040.  Hyosung

twice provided supplemental questionnaire responses in which it labelled the relevant

data field "Freight Revenue -- Plant to Port," thus linking this "inland freight revenue

directly to the underlying expense, which is domestic inland freight from Hyosung's plant

to the port of exportation." I&D Mem. at 24.  Hyosung did not seek to revise its

database labels or otherwise definitively explain the contents of its inland freight

revenue field, even when it had, by its own admission, identified a point of confusion.

*See* Hyosung – Case Br. at 6 n.5.  Instead of clearly indicating that it had made an

error, Hyosung made various methodological arguments that Commerce should (a)

include U.S. freight expenses in the cap because that reflected how Hyosung

negotiated freight with its customers, (b) change its programming language to include

U.S. inland freight expenses in the cap, or (c) substitute U.S. inland freight expenses as

the cap.  Hyosung Case Br. at 4-6.

Hyosung asserts that its business proprietary table comparing domestic and U.S.

inland freight expenses and its reported inland freight revenues establishes that the

U.S. inland freight expenses bear a closer relation to the freight revenue than domestic

inland freight expenses.  Hyosung's MJAR at 12-13.  Whether true or not, this is not an

explanation of exactly what data Hyosung included in its inland freight revenue.

Moreover, even if Hyosung's assertion about the *aggregate* revenue and expense fields

being sufficiently correlated is accepted, Commerce performs its analysis on a

*transaction-specific* basis and this table does not clearly suggest any correlation

between the revenue and expense fields at the transaction level.  *See id.* at 13.

 Hyosung relies on two sample sales to bolster its argument that "record

documentation confirms that Hyosung's reported inland freight revenue amounts relate

to U.S. inland freight" because Hyosung and its customers focus on delivery and

installation in the United States.[10]  *See* Hyosung's MJAR at 15-18.  With regard to

Hyosung's assertion that its sample documentation casts doubt on Commerce's

determination, Hyosung is asking the court to infer something about an entire data set

of sales based on what it contends is evident from a few select sales.  Not only is this

requested inference not self-evident from the documentation to which it points,[11]

Hyosung is not clear whether it is arguing that U.S. inland freight expense is *also* linked

to the revenue such that it should be included in the cap or is the only expense linked to

the revenue such that it should serve as an alternate cap.[12]

---

[10] The particular sales in question are referenced as SEQUs 4 and 21.  Hyosung's
MJAR at 15-17.  Regarding SEQU 4, for example, Hyosung avers that "there is nothing
in the extensive sales documentation for this sale to indicate that the customer
negotiated, let alone contemplated, charges related to inland freight in Korea."  *Id.* at 15.
[11] For example, regarding SEQU 4, what Hyosung claims is the basis for the inland
freight revenue appears to the court to be revenue associated with [[
]].  Hyosung's May 11 SQR at Ex. SA-7-C.
[12] *Compare* Hyosung's MJAR at 1-2 ("Specifically, Hyosung's reported inland freight
revenue was not only inclusive of (but made up primarily of) U.S. inland freight revenue
(*i.e.,* revenue from inland freight *incurred in the United States*), but Commerce capped
this revenue based solely on Hyosung's reported expenses for *Korean domestic inland
freight*.")(original italics) *with id.*, at 18 ("the agency's decision should be remanded so
that it can recalculate Hyosung's margin using the reported U.S. inland freight expenses
as the applicable cap to its reported freight revenue amounts.").

Hyosung bore the burden to properly document its entitlement to the favorable

adjustment. *Fujitsu Gen. Ltd.* 88 F.3d at 1040. Instead, it provided information to

Commerce that it subsequently characterized as confusing and, later, erroneous.

Hyosung Case Br. at 6 n.5; Hyosung Ministerial Error at 4. However, Hyosung failed to

adequately correct the information or otherwise document the error. In failing to act in a

manner that would correct its error, Hyosung failed to carry its burden to prove its

entitlement to the adjustment it seeks. *See Asociacion Colombiana de Exportadores de

Flores*, 13 CIT at 24, 704 F. Supp. at 1124 ("[P]arties must submit data promptly, and be

very clear as to what the data indicates").

Considering the record as a whole and Commerce's explanations of its

determination in the preliminary results and *Final Results*, Hyosung's identification of

certain sample sales from which Commerce *should have inferred* that its inland freight

revenue field was mislabeled is not enough to call into question the conclusions

Commerce reached after reviewing all the data that Hyosung provided. *Matsushita

Elec.*, 750 F.2d at 933 (evidence that detracts from the agency's conclusion or the

possibility of two inconsistent conclusions does not preclude the agency's finding from

being supported by substantial evidence). Hyosung asks the court to reweigh the

evidence reviewed by the agency. This it cannot do. *Downhole Pipe*, 776 F.3d at 1377.

Commerce's decision is based on substantial evidence in the record because

Hyosung failed to identify and support its entitlement to a more favorable adjustment.

When it presumably became aware that it had committed an error in reporting, instead

of seeking to correct the error, Hyosung obfuscated it by referring to the database label

as "informational" and one that "merely identified one component of freight revenue" –

referring to the overall result as "confusion."[13]  Hyosung Case Br. at 6 n.5.  This court

sustains Commerce determinations when they are based on substantial evidence in the

record; here, Hyosung fails to provide the court with a sufficient basis to disturb

Commerce's finding.

### III. Whether Commerce was Required to Correct the Error Alleged by Hyosung

Subsequent to the *Final Results*, Hyosung raised a ministerial error allegation,

asking Commerce to correct its "inadvertent labeling error."  Hyosung Ministerial Error at

4.  Commerce declined Hyosung's request, noting that its decision to use Hyosung's

reported domestic inland freight expense as the cap "d[id] not constitute a ministerial

error . . . because our adjustment is methodological in nature and . . . was consistent

---

[13] According to Hyosung, Commerce "confirm[ed] that the documentation on the record supports the conclusion that Hyosung's reported inland freight revenue related to U.S. inland freight."  Hyosung's MJAR at 17.  Hyosung is referring, in part, to Commerce's statement that "[f]or SEQUs 4 and 21 Hyosung also received freight revenue (for U.S. inland freight)."  Analysis of Data Submitted by Hyosung Corp. in the Final Results of the Antidumping Duty Admin. Review of Large Power Transformers from the Republic of Korea; 2013-2014 at 7, CJA 36; CR 264; PJA 36; PR 200; ECF No. 73-3.  In its response, Defendant refers to this statement as a "clerical error" and points the court to Commerce's determination in the *Final Results* that record evidence did not link U.S. inland freight to Hyosung's reported inland freight revenue.  Def.'s Resp. at 15 (citing I&D Mem. at 24).  Regardless of whether Commerce's statement was a clerical error, documentation regarding SEQUs 4 and 21 does not, by itself, call into question the entire set of sales reported to Commerce during the administrative proceeding.  For purposes of this court's review, because Commerce relied on two separate questionnaire responses, in which "Hyosung itself linked the inland freight revenue directly to the underlying expense, which is domestic inland freight from Hyosung's plant to the port of exportation," I&D Mem. at 24 (emphasis omitted), and because the record evidence does not establish that all the reported inland freight revenue data was mislabeled, substantial evidence supports Commerce's decision to cap the revenue based on domestic inland freight expense.

with our stated intention in the Final Results." Ministerial Error Mem. for the Am. Final

Results of the 2013/2014 Admin. Review of the Antidumping Duty Order on Large

Power Transformers from the Republic of Korea at 5, CJA 44; CR 219; PJA 44; CR 283;

ECF No. 73-4. Hyosung now argues that, pursuant to *NTN Bearing Corp. v. United*

*States*, 74 F.3d 1204, 1208-09 (Fed. Cir. 1995), Commerce should have allowed

Hyosung to correct its error.

Commerce may correct errors, even those made by a respondent, that are timely

raised. *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)

("Commerce is free to correct any type of importer error-clerical, methodolog[ical],

substantive, or one in judgment-in the context of making an antidumping duty

determination, provided that the importer seeks correction before Commerce issues its

final results and adequately proves the need for the requested corrections."). 

Hyosung's reliance on *NTN Bearing* to support its argument that Commerce should

have allowed it to correct its error is misplaced. In *NTN Bearing*, the Court of Appeals

for the Federal Circuit ("Federal Circuit") ruled that Commerce had abused its discretion

when it declined to correct a clerical error *purely on the basis of timeliness*, when the

respondent had sought to correct the error after the publication of the preliminary results

and had provided Commerce with supporting documentation to establish the clerical

nature of the error. *NTN Bearing*, 74 F.3d at 1208-09. Here, Hyosung has not

established that it sought to correct the error during the administrative proceeding.

Instead, in its administrative case brief, in a footnote, it referred to a point of confusion,

but otherwise made arguments to Commerce to include or substitute U.S. inland freight expenses in the cap.  *See supra* Section II.

Hyosung did not identify the database label as a "clerical error" until it filed its ministerial error allegations after Commerce issued the *Final Results*.  *See* Hyosung Ministerial Error at 4 (phrasing it as an "inadvertent labeling error).  Hyosung never sought to submit a new dataset with corrected labels and did not provide supporting documentation that clearly established the clerical nature of its error.

The Federal Circuit has found that "Commerce is not required to correct a final determination reflecting an error made by a private party when that error is not apparent from Commerce's final calculations released pursuant to 19 C.F.R. § 351.224(b), or from the final determination itself."  *Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1292 (Fed. Cir. 2003).  Only "when an error is apparent  (or should have been apparent) from the face of the calculation or from the final determination itself and goes uncorrected, that error, in effect, becomes a government error and, hence, a 'ministerial' error, and the government is required to correct it."  *Id.* (citing *Koyo Seiko Co. v. United States*, 746 F. Supp. 1108, 1111 & n.4 (1990) (a respondent's error was sufficiently obvious to require correction when it resulted in negative and positive dumping margins in excess of 16,000 percent)).

As the court discussed, Hyosung did not adequately establish that there was an error or that any such error was apparent from the record.  Instead, Hyosung asked Commerce to make inferences based on a comparison of the relative expenses for domestic versus U.S. freight, and then only provided substantiating documentation for a

small subset of its sales.  That documentation failed to clarify the situation.  Thus,

Hyosung fails to show that its error was apparent from the record and Hyosung's

ministerial error allegation is untimely.

CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Final Results are remanded to Commerce so that it

may reconsider its treatment of respondents' commissions as discussed in Section I;

and it is further

**ORDERED** that Commerce's Final Results are remanded to Commerce so that it

may evaluate its revenue capping practice and ensure that its application of this practice

is consistent with respect to both respondents, as discussed in Section I; and it is further

**ORDERED** that Commerce shall file its remand results on or before January 8,

2018; and it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule

56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000

words; and it is further

**ORDERED** that Commerce's determination to cap Hyosung's reported freight

revenue by Hyosung's reported domestic inland freight expense is sustained.


/s/      Mark A. Barnett____
Mark A. Barnett, Judge

Dated:  October 10, 2017
        New York, New York